# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

HARRY W. KELLER,    :

  Plaintiff,     :

vs.        :  CA 06-0751-C

MICHAEL J. ASTRUE,   :
Commissioner of Social Security,
          :
  Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 21 (order of reference)) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the

Commissioner's proposed report and recommendation, and the parties' arguments at the July 12, 2007 hearing before the Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to status-post fracture of the coccygeal area, arthritis and degenerative disc disease of the lumbar spine. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3.      The claimant's impairments which are considered to be "severe" under the Social Security Act are as follows: degenerative disc disease of the lumbar spine, osteoarthritis and status post fracture of the sacral coccygeal area. The medically determinable impairments of history of acid reflux, COPD and history of stomach cancer are non-severe impairments.
>
> 4.      The claimant's impairments do not, singly or in combination, meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).
>
> 5.      The claimant's allegations regarding pain and severe functional limitations which preclude his performance of work-related activities are found to be not credible.

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

6.      The claimant has the residual functional capacity to occasionally lift or carry fifty pounds, frequently lift or carry twenty pounds, stand and[/]or walk for about six hours in an eight hour workday, push or pull an unlimited duration with limitation as to occasional climbing, stooping, kneeling, crouching or crawling and no exposure to concentrated fumes, odors, gases or hazardous machinery. Based on same, the claimant is able to perform his past relevant work as a dishwasher.

7.      The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520 and 416.920).

(Tr. 23-24)  The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id*. at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work

history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as a dishwasher, is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability to return to his past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).  Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant

---

[2]     This Court's review of the Commissioner's application of legal principles, however, is plenary.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

retains the capacity to perform her past relevant work.  They are as follows:

> 1.      Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2.      Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3.      Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that he retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

In this case, the ALJ relied upon test three above to determine that the

---

[3]      As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4]      The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

5

claimant can perform his past relevant work as a dishwasher.  (*See* Tr. 22 (ALJ's reliance upon the DOT))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform his past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his  . . . PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> .        .        .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has

far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Sufficient documentation will be obtained to support the decision.  Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.  Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.  Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62.  In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation.  *Id.*

In this case, the plaintiff contends that the ALJ made the following

errors: (1) he erred in giving determinative weight to the opinions of physicians whose opinions were either adverse to claimant's interests or were from a non-treating source and inconsistent with other medical opinions; (2) he erred in failing to order a consultative examination pursuant to 20 C.F.R. § 1519a; (3) he erred in assessing the claimant's credibility regarding the ability to perform work-related activities; and (4) he failed to follow the requirements of SSR 96-7p in evaluating the claimant's explanation for not following prescribed treatment. Because it is clear to the undersigned that the ALJ erred not only in failing to specify the weight being accorded to Dr. David Caraballo's examination report[5] and in failing to order a consultative examination but also in relying upon the Dictionary of Occupational Titles to determine that Keller is capable of performing his past relevant work as a dishwasher, this Court need not reach the other issues raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

A.   **ALJ's Erroneous Reliance Upon the DOT in Finding that Plaintiff Can Perform His Past Relevant Work as a Dishwasher.**   In this

---

[5]      This issue was raised as a sub-issue within the context of plaintiff's first assignment of error.

case, the ALJ relied upon the Dictionary of Occupational Titles ("DOT"), and its companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), *Romine v. Barnhart*, 454 F.Supp.2d 623, 626 n.5 (E. D. Tex. 2006) ("As well as the DOT, the Commissioner relies on its 'companion publication' SCO 'for information about the requirements of work in the national economy.'"), to determine that Keller can perform his past relevant work as a dishwasher:

> The claimant has past relevant work experience as a dish washer. This job is listed in the Dictionary of Occupational Titles (DOT) as follows: WASHER 599.687-030-one who washes metal, glass, rubber, or plastic objects: sprays objects with sprayer nozzle or immerses objects in washing and rinsing solutions to remove debris, manually or using a conveyor; one who dries objects, using cloth, air hose or drying oven. The strength requirements of this job indicate that it is performed at a medium exertional level. In addition, the DOT indicates that the "Physical Demands" of this job state that the following physical tasks are "not present" in this job: climbing, balancing, stooping, kneeling, crouching or crawling.[6] The "Environmental Conditions" listed for this job reflect that exposure to weather conditions, extreme cold and heat are not present in this job. The DOT indicates that wet/cold and humidity are frequently present up to 2/3 of the time. Social Security Ruling 82-61 indicates that the DOT can be relied upon for this information (See also 20 CFR Section 404.1566(d)). Based upon the claimant's residual functional capacity for medium type work activities as follows: occasionally lift or carry fifty pounds, frequently lift or carry twenty pounds, stand and[/]or walk for about six hours in an

---

[6]    The physical demands cited to by the ALJ are not actually set forth in the DOT; instead, they are set forth in the DOT's companion publication, the SCO.

eight hour workday, push or pull an unlimited duration with limitation as to occasional climbing, stooping, kneeling, crouching or crawling and no exposure to concentrated fumes, odors, gases or hazardous machinery, the undersigned finds that the claimant remains capable of performing his past relevant work as a dishwasher. Medium work generally involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. Although medium work activity involves frequent bending or stooping, as indicated above, the DOT indicates that this is not present in the job of a washer.

(Tr. 22 (footnote added))

The ALJ in this case was, in this Court's opinion, required to develop the record further given the divergence between the description of the physical demands of washer contained in the SCO (*see* Attachment A (SCO reflects that stooping and crouching are activities that are not present)) and Keller's description of his job as a dishwasher at Denny's (Tr. 67 (plaintiff described his job as requiring stooping 5 hours out of an 8-hour workday and crouching 3 hours out of an 8-hour workday)), particularly in light of the fact that plaintiff's description of his work is more consistent with the description of medium work contained in the Commissioner's own regulations and social security rulings than is the description contained in the SCO. *Compare* 20 C.F.R. § 404.1567(c) (2007) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25

pounds.") *with* SSR 83-14 ("(Frequent in this context means from one-third to two-thirds of the workday.) Consequently, to perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching– bending both the back and the legs– in order to move objects from one level to another or to move the objects near foot level.")) This divergence underscores the warning contained in the SCO that users should be cautious in interpreting the information contained in the publication since the "'[o]ccupational definitions described are composite descriptions of occupations as they may typically occur and may **not** coincide with a specific job as actually performed in a particular establishment or in a given industry.'" *Liebisch v. Secretary of Health & Human Services*, 21 F.3d 428, 1994 WL 108957, *3 (6th Cir. 1994) (emphasis supplied).

In addition, the duty to further develop the record becomes even more exigent in this case given that "'[t]he O*Net system, using common language and terminology to describe occupational requirements, supercedes the seventy-year old *Dictionary of Occupational Titles* with current information that can be accessed online or through a variety of public and private sector career and labor market information systems.'" *Crider v. Highmark Life Ins. Co.,* 458 F.Supp.2d 487, 510 n.19 (W.D. Mich. 2006). The DOT listing for

WASHER, 599.687-030, is cross-referenced to the O*Net Code 53-7061.00, Cleaners of Vehicles and Equipment. (*See* Attachment B) The O*Net description provides that an individual performing this job must perform "physical activities that require considerable use of [the] arms and legs and moving [the] whole body, such as climbing, lifting, balancing, walking, **stooping**, and handling materials." (*Id*. (emphasis supplied)) Indeed, an individual must have extent flexibility,[7] trunk strength[8] and dynamic flexibility[9] in order to perform this job. (*Id*.) Certainly, the O*Net description of cleaner of vehicles and equipment is more akin to the description of dishwasher supplied by Keller than is the description of washer contained in the dated DOT. Accordingly, this Court concludes that the ALJ inappropriately relied upon the DOT in concluding that Keller can perform his past relevant work as a dishwasher. Therefore, this cause is due to be remanded for further proceedings not inconsistent with this decision.

### B.   Failure to Specify Weight Accorded to the Examination

[7]      Extent flexibility is "[t]he ability to **bend**, stretch, twist, or reach with [the] body, arms, and/or legs." (*Id*. (emphasis supplied))

[8]      Trunk strength is "[t]he ability to use [the] abdominal and lower back muscles to support part of the body repeatedly or continuously over time without 'giving out' or fatiguing." (*Id*.)

[9]      Dynamic flexibility is "[t]he ability to quickly and **repeatedly bend**, stretch, twist, or reach out with [the] body, arms, and/or legs." (*Id*. (emphasis supplied))

**Report of Dr. David Caraballo and the Failure to Order a Consultative Examination.** The Court considers these two errors together because of their close association. It is clear from the administrative decision that the ALJ was cognizant of Dr. Caraballo's September 3, 2003 consultative examination of Keller (Tr. 19 ("On September 3, 2003, David Caraballo, M.D., examined the claimant and completed a report to the record (Exhibit 7F). Dr. Caraballo indicated that he did not have the MRI films of the claimant's spine which Dr. Gillespy had ordered and reviewed. He recorded the claimant's complaints as to constant pain and shortness of breath. In addition, he noted that the claimant took over-the-counter medications to treat his conditions. Dr. Caraballo noted that the claimant's cervical, thoracic and lumbar spine were 'unremarkable.' Upon examination, he recorded slightly decreased musculoskeletal strength in the claimant's upper and lower extremities of 4/5. In addition, he indicated that the claimant had decreased range of motion in his hip of 30 degrees bilaterally. Dr. Caraballo recorded normal range of motion in the claimant's cervical and lumbar spine. He noted that straight leg raising in a lying position was positive. He noted[,] however[,] that the claimant had a 'very slow' but 'normal gait.' Finally, Dr. Caraballo indicated that the claimant had reflexes of 2+, or normal, reflexes in his upper and lower extremities. Dr. Caraballo diagnosed

the claimant as follows: status post fracture of the sacral coccygeal area; moderately severe sprain, strain and spasm of the lumbosacral spine area; parathesias of the lower extremities; weakness of the upper and lower extremities; chronic back pain; COPD/emphysema; smoker and history of stomach cancer.")); however, in indicating the weight he was affording the findings and conclusions expressed by the treating and examining sources of record the ALJ omitted any mention of Dr. Caraballo (Tr. 21 ("In finding that the claimant has the above-described residual functional capacity, the undersigned considered the findings and conclusions expressed by the treating and examining sources contained in the evidentiary record as required by Social Security Ruling 96-2p and 96-5p. The undersigned assigned significant weight to Dr. Gillespy's opinion as to the claimant's work-related capabilities. Dr. Gillespy indicated that as of July 31, 2003, the claimant could return to [his] former occupation. As a treating physician, his opinion is entitled to significant weight. The undersigned finds it significant that Dr. Morford's Physical Residual Functional Capacity opinion is consistent with Dr. Gillespy's findings. Dr. Morford examined Dr. Gillespy's treatment record, and treatment records in the file,[10] to include the MRI [dated] July 17, 2003 of

---

[10]     The Court finds it interesting that while Dr. Morford reviewed Dr. Caraballo's examination report the only findings he mentions are those associated with Keller's respiratory

the claimant's lumbar spine, and opined that the claimant remained capable of

performing work activity at a medium exertional level (as specifically set forth

herein). The undersigned did not assign Dr. Tweed's report significant weight

for several reasons. First, he admittedly did not have the benefit of review of

objective tests to confirm his diagnoses, he merely examined the reports from

those reviewing the tests. Second, he recommended further testing to better

diagnose the claimant's condition. Third, his report did not place any

restrictions as to the claimant performing work-related activities or suggest

that his condition met a listing. Finally, Dr. Tweed did not have a treating

relationship with the claimant. He examined the claimant on just one occasion

six months prior to the hearing in this matter. The claimant did not seek further

care as he had been advised by Dr. Tweed.")). The ALJ's failure to state with

particularity the weight he was affording the findings and diagnoses of Dr.

Caraballo is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.

1987) ("In assessing the medical evidence in this case, the ALJ was required

to state with particularity the weight he gave the different medical opinions

and the reasons therefor."); *see also McNamee v. Social Security*

---

condition (*see* Tr. 156). He failed to mention Dr. Caraballo's findings and diagnoses relative to
plaintiff's back and why those findings, particularly the noted back spasms, would have no
impact upon Keller's ability to perform the physical requirements of medium work.

15

*Administration*, 164 Fed.Appx. 919, 2006 WL 227586, *3 (11th Cir. 2006) ("Finally, '[i]n assessing the medical evidence the ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor.'").

The ALJ's failure to state with particularity the weight afforded Dr. Caraballo's examination report is a particularly glaring omission given that it constitutes the most current report by an examining physician, prior to the October 11, 2005 administrative hearing (Tr. 220) and the February 10, 2006 administrative decision (Tr. 24), not completely rejected by the ALJ. Regardless of whether the ALJ correctly rejected Dr. Gilbert Tweed's April 16, 2004 examination report (*compare* Tr. 21 *with* Tr. 162-165), his rejection of this report left the ALJ with quite the stale record. As aforesaid, the ALJ was left with Dr. Caraballo's examination report as being the most current; however, this report is dated September 3, 2003, more than two years prior to the administrative hearing (*compare* Tr. 141 *with* Tr. 220) and two years and five months before the ALJ's decision was entered (*compare* Tr. 24 *with* Tr. 220).

The Commissioner's regulations specifically contemplate that a consultative examination will be used "to secure needed medical evidence the

file does not contain such as clinical findings, laboratory tests, [or] a diagnosis or prognosis necessary for a decision." 20 C.F.R. § 404.1519a(a)(2) (2007). Moreover, in *Reeves v. Heckler*, 734 F.2d 519 (1984) the Eleventh Circuit determined that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Id.* at 522 n.1 (citation omitted); *see also McCray v. Massanari*, 175 F.Supp.2d 1329, 1338 & 1338-1339 (M.D. Ala. 2001) ("Ordering a consultative examination where one is necessary to make an informed decision is one means by which an ALJ discharges his duty to fully develop the record. . . . Although it is within the ALJ's discretion to order a consultative examination where he determines one is warranted, '[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.'"). In light of the staleness of the evidence in this case, Dr. Tweed's recommendation that a myleogram and post-myleogram CT scan of the lumbar spine was needed (Tr. 165), and the degenerative nature of the disc disease which compromises Keller's entire back (*see, e.g.,* Tr. 117 ("Small endplate corner fracture involving inferior endplate of L2."); 124 ("Degenerative changes most prominent at C5-6."); 132 ("Old compression fractures of the bodies of T7, T8,

T9, T11, T12 and L1."); 147 ("Multilevel disc bulge at L2-3, L3-4 and L4-5. At the L3-4 and L4-5 levels there is facet osteoarthritis causing some foraminal stenosis. There is a bulging of the disc centrally and to the left."); Tr. 165 (osteophyte disc complex at C5-6, C6 radiculopathy, osteophyte disc complex L5-S1 with HNP, bulging disc disease L2-L5, lateral stenosis L4-5 and L5-S1, and lumbar stenosis L5-S1); Tr. 168 ("PATIENT HAS MULTILEVEL SPONDYLITIC DISC BULGES SEEN AT L2-3, L3-4 AND L4-5. THERE IS BILATERAL FACET HYPERTROPHY SEEN AT L3-4 AND L4-5 WHICH CONTRIBUTES TO BILATERAL NEURAL FORAMINAL STENOSIS. [] AT L5-S1, THERE IS A CENTRAL AND LEFT PARACENTRAL DISK PROTRUSION APPRECIATED. THIS CAUSES CANAL STENOSIS AS WELL AS LEFT LATERAL RECESS STENOSIS WITH COMPRESSION OF BOTH THE RIGHT AND LEFT S1 NERVE ROOTS, LEFT GREATER THAN RIGHT. THE NEURAL FORAMINA ARE ALSO STENOTIC BILATERALLY DUE TO FACET HYPERTROPHY AT THIS LEVEL.")), this Court finds that this is one of those rare cases in which the ALJ erred to reversal in failing to order a consultative orthopedic examination. On remand, this examination can be ordered and should include an assessment by the consultative examiner of

plaintiff's residual functional capacity to perform work-related activities.[11]

## **CONCLUSION**

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 18th day of July, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[11]     Finally, the Court would note that while the ALJ specifically found plaintiff's history of stomach cancer, acid reflux, and COPD to be non-severe impairments, he makes no mention of plaintiff's history of coronary artery disease (Tr. 115) and two myocardial infarctions (Tr. 129). Plaintiff's cardiac condition need be given some consideration on remand given Keller's testimony that he was treated at the University of South Alabama Medical Center in June of 2005 for a mild heart attack and stroke. (Tr. 224; *see also* Tr. 212 (June 22, 2005 multidisciplinary discharge instructions from USA Medical Center))